IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| NAVNITLAL B. ZAVER, | * | CHAPTER 13 |
|     Debtor | * | |
| | * | CASE NO. 1:13-bk-04887 MDF |
| G6 HOSPITALITY FRANCHISING LLC, | * | |
| G6 HOSPITALITY IP LLC, and | * | |
| MOTEL 6 OPERATING L.P., | * | |
|     Movants/Objectants | * | |
| | * | |
|     v. | * | |
| | * | |
| NAVNITLAL B. ZAVER, | * | |
|     Respondent | * | |

## OPINION

Before me is a motion (the "Motion") filed by G6 Hospitality Franchising LLC, et. al, ("G6") to dismiss the Chapter 13 bankruptcy petition filed by Navnitlal Zaver ("Debtor"). G6 also filed an objection to Debtor's Chapter 13 plan. Debtor having filed an amended plan after the hearing on the Motion, the objection to Debtor's original plan is moot. For the reasons that follow, G6's Motion will be denied.

### I. Procedural History

On September 23, 2013, Debtor filed a petition under Chapter 13 of the Bankruptcy Code. At the time the petition was filed, G6 had filed suit against Debtor and other defendants in the District Court for the Middle District of Pennsylvania for damages related to an alleged breach of a franchise agreement for which Debtor was a guarantor. G6 alleges that HI Hotel Group, LLC ("HI Hotel") breached the franchise agreement and continued to use the Motel 6 trademark after it had lost its rights to do so. It then sold the business to 1450 Hospitality PA LLC ("1450 Hospitality"), which continued to use the Motel 6 trademark without authorization.

Thus, G6 has asserted breach of contract claims against Debtor and the other defendants as well as claims for violation of the Lanham Act, 15 U.S.C. § 1114(1). G6 filed the complaint on November 22, 2011. The parties were scheduled to go to trial on the very morning Debtor filed his bankruptcy petition. On October 9, 2013, G6 moved to dismiss the bankruptcy case and also sought relief from the automatic stay so that the trial could proceed in District Court. Debtor opposed both dismissal of the case and relief from the automatic stay. After procedural issues were resolved, G6 was granted relief from the stay on February 14, 2014 to litigate its claims against Debtor and the other defendants in District Court. After several continuances, an evidentiary hearing on the Motion was held on May 14, 2014.

In the meantime, Debtor filed a Chapter 13 plan. Both the Chapter 13 trustee and G6 filed objections to the plan. Debtor responded with a first amended plan on July 25, 2014. G6 has filed objections to Debtor's amended plan, which are scheduled to be heard on October 24, 2014.[1]

## II. Facts

Debtor has worked in the hotel industry for approximately thirty years. During this time he has been involved in the operation of a "dozen or so" hotels or motels in the greater Harrisburg area. At the time he filed his bankruptcy petition, Debtor held minority interests in the following entities: a ten percent interest in Fusion, Incorporated ("Fusion"), which operates a Budget Inn in New Cumberland, Pennsylvania; a ten percent interest in Harrisburg Investors Group, LLC ("HIG"), which operates a Staybridge Suites hotel in Harrisburg, Pennsylvania; and

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 made applicable to contested matters by Rule 9014.

2

an eleven percent interest in BVM Lodging Group, LLC ("BVM"), which operates a Motel 6 in Harrisburg. Debtor's primary income is derived from consulting services he provides to HIG in the operation of the Staybridge Suites. He and his wife receive household income of $8540 per month and their average monthly household expenses total $7618.50, leaving $921.50 in disposable income to commit to a Chapter 13 plan.

In his schedules, Debtor states that he holds interests in several other entities that previously operated motels or hotels, but were "defunct" at the time the petition was filed. These entities include: EL Hotel Group, LLC, which operated an Americas Best Value Inn in Carlisle, Pennsylvania until 2011; EL2 Hotel Group, LLC, which operated an Americas Best Value Inn in Chambersburg, Pennsylvania until 2011, and HI Hotel, one of the other defendants in the District Court action.[2] At the time HI Hotel applied for a Motel 6 franchise it was operating the business as a Holiday Inn. Debtor owns twenty percent of HI Hotel and is a guarantor of its obligations to G6.

In addition to his interests in various entities that are involved in the hospitality industry, Debtor owns a home and has an interest in several tracts of undeveloped commercial real estate. Debtor's residence is valued at $340,000 and is listed as being subject to a mortgage in the amount of $322,587. He also owns an undeveloped tract of land on Wildwood Drive in Harrisburg, Pennsylvania ("the Wildwood property"). In his schedules, Debtor values the Wildwood property at $250,000 with a secured lien in the amount of $295,268. Susquehanna Bank holds mortgages on Debtor's home and on the Wildwood property. Debtor's mortgage

---

[2]Amended Schedule B also list an interest in Monica Hotel Management, Inc., but the business is listed as "defunct" with no value.

payments on the loan secured by his residence were current on the date of the petition. The loan secured by the Wildwood property became due in full before the petition was filed.

Debtor also holds a one-third equitable interest in a 1.5-acre tract of undeveloped commercial property in West Hanover Township, Pennsylvania ("the West Hanover property") and a one-sixth interest in a property on Allentown Boulevard, Harrisburg, Pennsylvania ("the Allentown Blvd. property") on which a Friendly Inn is operated.[3] Debtor's interest in the West Hanover property is valued at $45,000 and his interest in the Allentown Blvd. property is valued at $200,000. Neither of the properties in which he holds an equitable interest is encumbered.

On the date of the petition, Debtor and his non-debtor spouse had three joint checking accounts with an aggregate balance of $41,331.47. They jointly own a 2008 Lexus. Debtor owns in his individual name a 2001 Honda Odyssey, a 2002 Jaguar, and a 2012 VW Jetta, the latter of which is driven by his daughter. Of the four vehicles in which Debtor has an interest, only the Jetta is subject to a lien. Debtor also reports an interest in a billboard located in Harrisburg, which he values at $500 and a whole life insurance policy valued at $53,982.

Debtor's only secured creditors are Susquehanna Bank and VW Credit, both of which have filed proofs of claim in a total amount of $631,384.98.[4] The Internal Revenue Service ("IRS") filed the only priority unsecured proof of claim in the amount of $2139. Although Debtor reported general unsecured claims of $749,261.47 in his schedules, only three unsecured

---

[3]The recorded memoranda evidencing Debtor's equitable interest in each of the two properties do not assign a value to the interest. No evidence was presented as to how the percentage interests testified to were calculated.

[4]The Court takes judicial notice of the proofs of claims filed in the claims register in this case. *See Abbatiello v. Natl. Collegiate Trust (In re Abbatiello)*, 484 B.R. 655, 658 (Bankr. M.D. Pa. 2013).

creditors filed proofs of claim before the February 5, 2014 bar date – Discover Card ($233.83); Choice Hotels International ($63,720 for a breach of franchise claim ); and Federal Loan Servicing ($182,291.19 for student loans). G6 did not file a proof of claim.

Debtor has claimed Pennsylvania exemptions for real and personal property under 11 U.S.C. § 522(b)(3), including claims for some items of personal property held as tenants by the entirety. He also claims as exempt his interests in real property, in various business entities, in the billboard, and in two motor vehicles (the Honda and the Jaguar) under the general monetary exemption of $300 pursuant to 42 Pa. C.S. §8123(a). Therefore, the value of these assets, even when considering the liens that exist against some of the properties, significantly exceeds the amount of the available exemptions.

Although Debtor was stubbornly evasive on this issue, evidence introduced at the hearing supported G6's contention that the suit filed by G6 precipitated the filing of Debtor's bankruptcy petition. After G6 filed suit, Debtor solicited the assistance of friends, who he believed had connections with representatives of G6, to pursue settlement of the lawsuit. In an email dated October 8, 2013 to a friend, Debtor stated: "I seek your consultation and assistance to guide me in a direction that will relieve me of this burdensome situation [referring to the Motel 6 litigation]. . . .This burdensome situation was the primary [sic] I recently filed for Chapter 13. If among other things, I successfully satisfy the MOTEL [sic] 6 action I may be able to withdraw my petition filing and resume potentially profitable business ventures." Ex. G6-1.

The dispute with G6 arose from a franchise agreement entered into between HI Hotel and G6's predecessor, Motel 6 Franchising. When HI Hotel was pursuing the franchise in 2009, Debtor submitted a "Personal Business Financial Statement" ("PBFS") to Motel 6 Franchising describing his personal assets and liabilities. When the franchise agreement was executed,

Debtor was required to guarantee HI Hotel's obligations under the agreement. After Debtor filed for bankruptcy relief, G6 noted that the asset values disclosed in the PBFS differed significantly from the values reported in Debtor's schedules. Debtor's interests in real property or in entities owning hotel or motel properties listed in his bankruptcy schedules in 2013 are compared to the 2009 values listed in the PBFS, as set forth in the following table[5]:

| COMPARISON OF VALUES OF DEBTOR'S INTERESTS IN COMMERCIAL PROPERTIES PBFS (2009) and SCHEDULES (2013) | | | | |
|---|---|---|---|---|
| **Owner** | **Property** | **PBFS Value** | **Scheduled Value** | **% decline** |
| Debtor | undeveloped land in West Hanover | $140,000 | $45,000 | 72% |
| Debtor | undeveloped land on Wildwood Dr. | $750,000 | $250,000 | 67% |
| Fusion | Budget Inn (formerly Rodeway Inn) | $250,000 | $50,000 | 80% |
| HIG | Staybridge | $1,350,000 | $1,270,000 | 6% |
| BVM | Motel 6 (formerly Country Hearth) | $352,000 | $154,000 | 57% |

---

[5]The PBFS included an interest in a Super 8 Motel in Harrisburg, a Holiday Inn in Carlisle, an Econo Lodge in Carlisle, and an Econo Lodge in Chambersburg. Debtor sold his interest in the two Econo Lodge motels in 2011. Debtor testified at the hearing that the Super 8 Motel that was sold was owned by Anu, Inc., a corporation in which his wife, not he, had an interest. Although Debtor held an equitable interest in the Allentown Blvd. property at the time he submitted the PBFS to G6, he did not include this interest in his list of assets. Debtor stated in the PBFS that he held a 35% interest in the Staybridge Suites property. However, he testified at the hearing that his interest was 10%. No evidence was offered to explain the discrepancy. Based on his testimony, the value used in the table assumes that Debtor holds a 10% interest in HIG.

6

At the hearing on the Motion, Debtor testified that the values in both the PBFS and in his schedules were based upon his knowledge of the market for commercial real estate and hotel properties or the opinions of his partners. He attributed the decrease in the values to the impact of the 2008 recession on the commercial real estate market. As an example, he testified that EL2 sold the Chambersburg motel for $575,000 in 2011. At the time it was sold, the motel was operating under the franchise Americas Best Value Inn.[6] Debtor testified that the same property was worth $2.15 million when he submitted information on its value to Motel 6 Franchising in 2009, when it was operating as an Econo Lodge. He further testified that EL sold the Americas Best Value Inn in Carlisle for $885,000 in 2011, when it had been valued at $2.5 million in 2009. Debtor also testified that the Carlisle Motel 6 was sold for $2 million and the value for the same property had been listed on the PBFS at $4.5 million.

On July 25, 2014, Debtor filed his first amended plan into which he proposed to pay $932.00 per month for sixty months. Therefore, over the life of the plan Debtor anticipates making total payments of $55,920. The amended plan also provides for Debtor to market his 16.67% interest in the West Hanover property and his 33% interest in the Allentown Blvd. property and to use the proceeds to fund the projected plan payments. Debtor further anticipates restructuring the Susquehanna Bank loan secured by the Wildwood property by paying the full amount due on the note over the term of the plan.

---

[6]On May 30, 2012, Vantage Hospitality notified Debtor as the representative of EL2 that the Americans Best Value Inn franchise for the Chambersburg motel was being suspended from the franchise system for non-payment of monthly fees and unauthorized transfer of membership.

7

## III. Discussion

*A. Standing*

"[O]n request of a party in interest . . . the court may . . . dismiss a case under [Chapter 13] . . . for cause." 11 U.S.C. § 1307(c). In his post-hearing brief, Debtor argues that because G6 has not filed a proof of claim and the bar date has passed, it does not have standing to move to dismiss Debtor's case. Debtor argues that without an allowed claim, G6 is not a party in interest at this point in the case. Debtor cites no authority in support of this proposition.

In *Martinez v. Arce (In re Torres Martinez)*, 397 B.R. 158 (B.A.P. 1st Cir. 2008), the First Circuit BAP rejected a similar argument. In that case, a creditor filed a motion to dismiss the debtor's Chapter 13 case for having been filed in bad faith. The debtor objected to the creditor's standing to file the motion because the creditor's claim had been disallowed. Thus, the debtor argued, the creditor had no "pecuniary interest" in the case. *Id.* at 164. The First Circuit BAP held that, despite not having filed a claim, the creditor had standing to file a motion to dismiss because its pecuniary interest in the case continued until a discharge was entered. If the case was dismissed for any reason before the entry of a discharge, the claim would continue unaffected. I find this reasoning to be equally applicable to the matter before me and, therefore, conclude that G6 is a "party in interest" and had standing to file the Motion. *See Armstrong v. Rushton (In re Armstrong),* 303 B.R. 213, 219 (B.A.P. 10th Cir. 2004) (holding that person need not file proof of claim to be "party in interest"); *In re Marshall*, 298 B.R. 670, 675 (Bankr. C.D. Cal. 2003) (holding that creditor who fails to file proof of claim remains "party in interest" authorized to move to dismiss Chapter 11 case).

8

*B. Dismissal of petition not filed in good faith*

On request of a party in interest, a Chapter 13 bankruptcy case may be dismissed "for cause." 11 U.S.C. §1307(c). Although good faith is not explicitly mentioned in the Code, the Court of Appeals for the Third Circuit recognizes the absence of good faith or presence of bad faith as grounds for dismissal. *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). However, "good faith is a term incapable of precise definition. [T]he good faith inquiry is a fact intensive determination . . . [which] . . . must be assessed on a case-by-case basis in light of the totality of the circumstances." *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996). A bankruptcy court must assess a debtor's good faith based on the facts of each case, "considering the 'honest intention' of the debtor and 'whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law.'" *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364 (3d Cir. 2007) (quoting *Frank v. Tamecki (In re Tamecki*), 229 F.3d 205, 207 (3d Cir. 2000)). Dismissal should be reserved for "'those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.'" *Id.* (quoting *In re Zick,* 931 F.2d 1124, 1129 (6th Cir. 1991)); *cf. Perlin* at 497 F.3d at 375 (holding that debtors with substantial income who filed bankruptcy after creditor requested default judgment against them did not display bad faith); *In re Dahlgren*, 418 B.R. 852, 856-57 (Bankr. D.N.J. 2009) (holding that debtor filing bankruptcy on eve of sale in lieu of partition of real property, while "suspicious," was insufficient to warrant dismissal of case). Once a creditor makes a prima facie showing that a case was filed in bad faith, the burden shifts to the debtor to prove by a preponderance of the evidence that the Chapter 13 case was filed in good faith. *Alt v. United States (In re Alt)*, 305 F.3d 413, 420 (6th Cir. 2002);

9

*In re Scotto-Diclemente,* 459 B.R. 558, 562 (Bankr. D. N.J. 2011) (citing *Tamecki*, 229 F.3d at 207).

The Third Circuit has adopted the following list of factors as a framework for analyzing good faith when considering whether a Chapter 13 case should be dismissed under 11 U.S.C. § 1307(c):

>    (1)  the nature of the debt;
>    (2)  the timing of the petition;
>    (3)  how the debt arose;
>    (4)  the debtor's motive in filing the petition;
>    (5)  how the debtor's actions affected creditors;
>    (6)  the debtor's treatment of creditors both before and after the petition was filed; and
>    (7)  whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Lilley,* 91 F.3d at 496 (citations omitted), *quoted in Myers*, 491 F.3d at 125. However, the Court also has made it clear that "no list is exhaustive of all the factors which could be relevant when analyzing a particular debtor's good faith." *15375 Memorial Corp. v. Bejco, LP.* (*In re 15375 Memorial Corp*), 589 F.3d 605, 618 n. 8 (3d Cir. 2009).

One of the *Lilley* factors – timing of the petition – typically becomes an issue when the defendant in a non-bankruptcy lawsuit files a petition for relief in the bankruptcy court. Filing bankruptcy while litigation is pending in another forum does not necessarily constitute bad faith, but suspicious timing of a petition may be considered in a bad faith analysis. *Myers*, 491 F.3d at 125. The Third Circuit has observed that a bankruptcy court may "find that bad faith exists 'where the purpose of the bankruptcy filing is to defeat . . . litigation [in another forum] without a reorganization purpose.'" *Id.* (quoting *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994)). *See In re Soppick*, ___ B.R. ___, 2014 WL 4295780, *12 (Bankr. E.D. Pa. August 28, 2014) (observing

10

Case 1:13-bk-04887-RNO   Doc 98   Filed 10/15/14   Entered 10/15/14 16:46:13   Desc
Main Document    Page 10 of 15

that a bankruptcy filing is in bad faith when the purpose of the filing is to stay ongoing litigation, "without the ability to reorganize and provide for the creditor . . . involved in that litigation"). Filing a bankruptcy petition to stay litigation may suggest bad faith, but a debtor may rebut this conclusion by demonstrating an intention and ability to reorganize.

Lack of good faith may also be present when a debtor is not forthcoming with the bankruptcy court and with creditors. A debtor is obligated to provide full disclosure of his or her financial affairs, including a complete and accurate list of assets and liabilities. *Marrama v. Citizens Bank (In re Marrama)*, 430 F.3d 474, 478 (1st Cir. 2005), *aff'd,* 549 U.S. 365 (2007) ("Those who seek the shelter of the bankruptcy court [must] not play fast and loose with their assets or with the reality of their affairs.") (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987); *In re Dixon*, Bank. No. 08:10510DWS, 2009 WL 151688, *2 (Bankr. E.D. Pa. Jan. 20, 2009) *aff'd* Civ. A. No. 09-1451, 2009 WL 1798819 (E.D. Pa. June 24, 2009) (holding that debtors have strict obligation to provide full and accurate information regarding their financial condition); *cf. In re Leavitt*, 171 F.3d 1219, 1225 (9th Cir. 1999) (upholding dismissal of case where assets not disclosed or undervalued); *In re Buchanan*, 225 B.R. 672 (Bankr. D. Minn. 1998), *aff'd sub.nom.*, *Buchanan v. U.S.*, No. 98-2291 (PAM), 1999 WL 314819 (D. Minn. April 2, 1999) (dismissing Chapter 13 case in which debtor failed to disclose numerous assets, undervalued assets, under-reported income and failed to disclose significant liabilities owed to IRS). Therefore, when a debtor undervalues assets, he or she is not being candid with the court or with creditors regarding the debtor's financial affairs. *In re Stevens*, BHN 008, 2013 WL 5229801, *4 (Bankr. D. N.H. Sept. 17, 2013) (holding that intentional undervaluation of an asset may constitute bad faith).

11

In the matter before me, G6 has alleged that Debtor's petition was filed in bad faith based upon two factors – the timing of the petition and the undervaluation of Debtor's assets in his schedules. G6 having met its burden to challenge Debtor's good faith, it then became Debtor's burden to persuade the Court that the petition was filed in good faith.

 1. *Timing of the petition and motivation for filing*

At the hearing on the Motion, Debtor denied that the G6 suit was his primary motivation for filing. His protestation, however, is belied by the preponderance of the evidence presented at the hearing. Debtor filed his bankruptcy petition the day trial was to commence in District Court when he and other parties were unable to settle G6's claim. Although Debtor had other creditors, he was unable to point to any other reason for seeking bankruptcy relief at this particular time. Further, in correspondence admitted into evidence he implied that if the litigation could be settled, and other unexplained issues could be resolved, he might dismiss his case.

Debtor is addressing only a few issues in his Chapter 13 plan. He has two secured claims with no arrears. He intends to continue to make payments directly to these creditors. The IRS filed a proof of claim for $2139, but he does not even acknowledge this claim in the amended plan. Of the three filed unsecured claims, two are significant – a student loan claim, which Debtor is not seeking to discharge, and the $63,720 claim of Choice Hotels International, which also arose in the context of a franchise guarantee.

Nevertheless, the Court concludes that while the G6 suit undoubtedly precipitated Debtor's bankruptcy filing, his involvement in numerous convoluted ventures regarding the hospitality industry, coupled with his significant reduction in income, supports Debtor's contention that he needs bankruptcy relief and intends to reorganize his affairs.

12

*2. Whether Debtor has been forthcoming with the Court and with creditors*

The testimony at the hearing revealed that in 2009 Debtor placed significantly higher values on some of the same assets included in his bankruptcy petition. He admitted that the values were not based on appraisals, but solely on his impressions and as well as those of his partners. He attributed the significant reduction in values between 2009 and 2013 to the recession. Although there was a significant difference between the values assigned on these two dates, there was insufficient evidence for me to determine conclusively whether the differences were attributable to: (a) an undervaluation of the assets in the schedules; (b) an overvaluation of the assets in the PBFS; or (c) a precipitous decline in value between 2009 and 2013. Neither party presented evidence on the current value of Debtor's real property and business interests other than Debtor's testimony. Debtor stated that motels owned by EL and EL2 both were sold in 2011 for less than half the value listed on the PBFS. Therefore, there is inadequate evidence for the Court to conclude that these various assets had a higher value on the petition date than is listed or that Debtor assigned a value to the business with reckless disregard for its value. *See In re Stevens*, BR 12-11392-JMD, 2013 WL 5229801 (Bankr. D.N.H. Sept. 17, 2013) (observing that inadequate evidence was presented to support allegation that debtor undervalued business). In the absence of more persuasive evidence, I conclude that Debtor did not misrepresent the value of his assets in his schedules.

*3. Presence of reorganization purpose*

In *Myers,* the Third Circuit held that a bankruptcy petition filed to defeat litigation in another forum, without a reorganization purpose, was evidence of bad faith. *Myers*, 491 F.3d at 125. Implicit in this holding is the proposition that filing for bankruptcy to stop a lawsuit, without

13

more, is not bad faith. The bankruptcy court must further find that a debtor either does not intend to use the bankruptcy filing to reorganize or does not have the ability to reorganize.

What is the purpose of Debtor's amended Chapter 13 plan? Debtor proposes to continue making payments to his mortgage and vehicle lenders, to restructure the debt secured by the Wildwood property and to commit $932 per month to the amended plan for the payment of administrative expenses and allowed claims. The principal on Susquehanna loan secured by the Wildwood property became due in 2009, and the balance owed on the date of the petition was $289,828.61. Debtor proposes to pay the loan in full at a reduced interest rate over the term of the plan.[7] Debtor asserted in his testimony and in his schedules and plan, that he has experienced a significant reduction in income. The amended plan seeks to address these issues. Therefore, I find that Debtor has demonstrated that he intends to use the bankruptcy process to reorganize his financial affairs.

4. *Debtor's treatment of creditors*

A clear understanding of Debtor's treatment of creditors has yet to emerge. As Debtor's schedules indicate, he generally has paid creditors to whom he owes a direct obligation in a timely manner. His obligations to creditors as an guarantor, however, are a different matter. He has an interest in at least three hospitality entities in which the franchisor has taken steps to terminate the franchise. Admittedly the defaults on these agreements were not fully in his control and the extent of Debtor's liability to G6 in particular has not been finally determined. However,

---

[7]The IRS's priority claim is not addressed in the amended plan. Accordingly, the amended plan cannot be confirmed unless an objection to the claim is filed and sustained by the Court or the IRS withdraws the claim.

14

Debtor has admitted that HIG defaulted on the franchise agreement and transferred the franchise to 1450 Hospitality without the authorization of the franchisor.

Further, the payments in Debtor's proposed plan are rather paltry considering the value of the assets he proposes to retain. Debtor seeks to exempt approximately $37,000 in a checking account; three motor vehicles; whole life insurance valued at approximately $56,000; and an interest in real property valued at $32,740. In addition, if he liquidates his interest in Fusion and in HIB, rather than increase his plan payments, he intends to use these funds to reduce the monthly amounts paid into the plan. Nevertheless, I do not find his actions so egregious as to support dismissal of his case. Debtor's good faith must be examined again in connection with plan confirmation. I will reserve for further consideration his treatment of creditors in that context.

## IV. Conclusion

For the reasons set forth above, after considering the totality of the circumstances, I find that Debtor has provided sufficient evidence to sustain his burden to prove that his case was filed in good faith.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: October 15, 2014